IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHANIE R. KEEFER, | : | 3:12-cv-1665 |
| | : | |
| Plaintiff, | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Under Commissioner of the Social | : | |
| Security Administration, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM

## March 19, 2014

In the above-captioned action, Plaintiff seeks review of a decision of the Commissioner of Social Security denying her application for disability benefits, namely supplemental security income ("SSI").  For the reasons that follow, we shall vacate the decision of the Commissioner and remand for further proceedings.

## I.    BACKGROUND

Plaintiff was born on November 4, 1971, and, when she filed her application for SSI, she was 37 years-old.  At that time, she was married but separated and lived with her long-term boyfriend.  (Tr. 36).[1]  She obtained her GED in 1992 and

---

[1] Citations to "Tr. ___" are to pages of the administrative record filed by Defendant as part of the Answer on October 22, 2012.  (Doc. 8).

1

is able to read, write, and perform basic math.  (Tr. 21, 39).  Plaintiff has been

unemployed since 2008, and a vocational expert in this case reported that she has

previously been employed as a fast-food worker, deliverer of food, and deliverer of

merchandise.  (Tr. 37, 59).

Plaintiff filed a protective application for SSI on November 17, 2008,

alleging disability beginning on March 12, 2008 (Tr. 17), and identified the

following impairments:  anxiety, paranoia, tremors, depression, suicidal thoughts,

borderline personality disorder, migraines, headaches, memory loss, post-traumatic

stress disorder ("PTSD"), and four bulging discs in her spine.  (Tr. 150).  Her claim

was denied, and, thereafter, Plaintiff requested a hearing before an Administrative

Law Judge ("ALJ").  (Tr. 17).  An ALJ conducted a hearing on June 29, 2010, at

which Plaintiff and an impartial vocational expert ("VE") testified.  (Tr. 17).  The

ALJ issued her decision on November 16, 2010, determining that Plaintiff was not

disabled.  (Tr. 26).

In rendering her decision, the ALJ utilized a five-step sequential evaluation

process requiring her to consider whether a claimant:  (1) is engaging in substantial

gainful activity;[2] (2) has an impairment that is severe or a combination of

---

[2]  If the claimant is engaging in substantial gainful activity, the claimant is not disabled
and the sequential evaluation proceeds no further.  Substantial gainful activity is work that
"involves doing significant and productive physical or mental duties" and "is done (or intended)
for pay or profit." 20 C.F.R. § 416.910.

impairments that is severe;[3] (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment;[4] (4) has the residual functional capacity ("RFC") to return to her past work;[5] and, (5) if not, whether she can perform other work in the national economy. *See* 20 C.F.R. § 416.920; *Poulos v. Comm'r of Soc. Sec.,* 474 F.3d 88, 91-92 (3d Cir. 2007).

Residual functional capacity, determined at step four of the sequential evaluation, is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. *See* Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and

---

[3] The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 416.920(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. *Id.* If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. § 416.920(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process. 20 C.F.R. §§ 416.923 & 416.945(a)(2).

An impairment significantly limits a claimant's physical or mental abilities when its effect on the claimant to perform basic work activities is more than slight or minimal. Basic work activities include the ability to walk, stand, sit, lift, carry, push, pull, reach, climb, crawl, and handle. 20 C.F.R. § 416.945(b). An individual's basic mental or non-exertional abilities include the ability to understand, carry out and remember simple instructions, and respond appropriately to supervision, coworkers and work pressures. 20 C.F.R. § 416.945(c).

[4] If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step.

[5] If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled. *See* 20 C.F.R. § 416.920(a)(4)(iv).

3

continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule.  The RFC assessment must include a discussion of the individual's abilities.  *See id*; 20 C.F.R. § 416.945; *Hartranft v. Apfel,* 181 F.3d 358,  359 n. 1 (3d Cir. 1999) ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

In the present case, as to the first two steps, the ALJ determined that Plaintiff had not performed substantial gainful activity since November 17, 2008, the date of her application, and that she had the following severe impairments: lumbar degenerative disc disease, obesity, headaches, depression, panic disorder, paranoid personality disorder, and polysubstance abuse in remission.  (Tr. 19).

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.  As to Plaintiff's physical impairments, the ALJ noted that her disc disease does not result in motor loss or an inability to ambulate effectively; there is no listing for migraines; and her obesity does not increase the severity of her coexisting impairments to the extent that the combination meets any listing impairment.  (Tr. 19).  Turning to Plaintiff's mental impairments, the ALJ found that her impairments do not – singly or in combination – meet or medically equal

4

the criteria of listings 12.04 (Affective Disorders) or 12.06 (Anxiety Related

Disorders), specifically failing to satisfy the "Paragraph B" criteria.  *See* 20 C.F.R.

Pt. 404, Subpt. P, App. 1.[6]  The ALJ explained that Plaintiff has mild restriction in

her daily-life activities, observing that she is able to attend to her personal needs

and perform household chores within her physical abilities with breaks.  (Tr. 19).

As to her social functioning, the ALJ described that Plaintiff has moderate

difficulties, as she generally dislikes interacting with people and has paranoid

ideation, but that she has a good relationship with her children and boyfriend and

related adequately at the hearing and in clinical settings.  (Tr. 20).  Turning to

Plaintiff's concentration, persistence, or pace,[7] the ALJ found that Plaintiff's

relevant difficulties were moderate, detailing that she has decreased motivation;

watches the news and is aware of current events; possesses adequate attention and

concentration during mental status exams and at the hearing; and is able to

understand, remember, and execute uncomplicated tasks and routines.  (Tr. 20).  As

---

[6] Paragraph B requires that a claimant's relevant impairments result "in at least two of the following:  (1) Marked restriction of activities of daily living; or (2) Marked difficulties in maintaining social functioning; or (3) Marked difficulties in maintaining concentration, persistence, or pace; or (4) Repeated episodes of decompensation, each of extended duration (*i.e.*, "three episodes within 1 year, or an average of once every four months, each lasting for at least 2 weeks")[.]"  20 C.F.R. Pt. 404, Subpt. P, App. 1.  "Marked," as used here, means "more than moderate but less than extreme."  *Id.*

[7] "Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings."  20 C.F.R. Pt. 404, Subpt. P, App. 1.

for episodes of decompensation, the ALJ stated that Plaintiff has experienced one to two, each of extended duration, but that her inpatient hospitalizations occurred prior to the alleged onset date.  (Tr. 20).  In addition, the ALJ concluded that Plaintiff failed to satisfy the "Paragraph C" criteria.  20 C.F.R. Pt. 404, Subpt. P, App. 1.

At step four, regarding Plaintiff's RFC, the ALJ concluded that Plaintiff can perform "light work" as defined by 20 C.F.R. § 416.967(b) with some delineated limitations.  (Tr. 20).  In making that determination, the ALJ, among other things, considered Plaintiff's testimony at the administrative hearing, highlighting the following:  Plaintiff has had psychiatric treatment at the VA since 1994, claimed to suffer from anxiety attacks, and stated that she avoids being around people whenever possible.  (Tr. 21).  Plaintiff represented that she suffers from migraine headaches twice a week, which last for 2-4 hours and require her to retreat to a quiet dark room, and that she experiences less severe headaches daily.  (Tr. 21).  She claimed that she is able to stand for 30-45 minutes before having to rest, apply ice packs, and/or take medication.  (Tr. 21).  Plaintiff testified that she has difficulty concentrating and following directions, processes information slowly, and also, that her medications make her groggy.  (Tr. 21).

After recounting Plaintiff's testimony, the ALJ determined that "the

claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 21-22).  Although medical evidence reveals "a significant psychiatric history with extensive substance abuse, physical and sexual abuse, and loss of two children in a fire in 2003," the ALJ found no evidence of severe psychiatric or functional difficulties since 2005.  (Tr. 22).  As to Plaintiff's physical impairments, the ALJ opined that, "[d]espite allegations of longstanding back pain, clinical findings and treatment are unremarkable."  (Tr. 22).  A 2007 MRI of the lumbar spine showed multi-level bulges, but without definite nerve cord compression, and physical examinations indicate that Plaintiff has adequate range of motion, strength, sensation and reflexes, negative straight leg tests and normal gait.  (Tr. 22).  As to Plaintiff's testimony regarding headaches, the ALJ found no evidence to support the severity or frequency of the headaches alleged. (Tr. 23).

Turning to the medical opinion evidence, the ALJ attributed little weight to the assessments of Dr. Stanley Schneider, Ed.D, who preformed two consultative examinations ("CEs"), observing that his conclusions were largely based on

Plaintiff's subjective statements.  (Tr. 23).  Rather, the ALJ credited the

assessments of the state agency psychologist, Dr. John Gavazzi, Psy.D,

determining that his opinion was more consistent with objective findings and

treatment history.  (Tr. 23).  In addition, the ALJ assessed little weight to the

opinion of Dr. Scott D. Mueller, M.D., the treating physician, who had opined that

Plaintiff is incapable of performing even sedentary work on a full-time basis.  (Tr.

23).  The ALJ explained that

> [t]he objective medical evidence, including Dr. Mueller's
> own treatment records, do not support that the claimant is
> this limited.  The claimant does not have a surgical
> problem.  She demonstrates adequate range of motion,
> sensation, reflexes, and motor strength.  She does not
> have gait impairment.  Her treatment has been
> conservative.  There is no evidence that headaches are
> uncontrolled by medications such that they are of
> severity or frequency to preclude work.

(Tr. 23).  Instead, the ALJ credited the opinion of Dr. Christine Daecher, D.O., and

the state agency physician, Dr. Vraflat Popat, M.D., determining that their findings

were supported by the record as a whole.  (Tr. 23).

Next, the ALJ stated that, based on the testimony of the VE, Plaintiff's past

relevant work would require the performance of activities beyond her residual

functional capacity.  (Tr. 23).

Finally, at step five, the ALJ determined that, considering Plaintiff's age,

education, work experience, and RFC, she was capable of performing other jobs existing in significant numbers in the national economy.  (Tr. 25).  The ALJ noted that Plaintiff met the regulatory definition of younger person, *see* 20 C.F.R. § 416.963(c) (stating that, for individuals under age 50, age is not generally considered to seriously affect ability to adjust to other work), that Plaintiff had at least a high school education and could communicate in English, and also that transferability of job skills was irrelevant because Plaintiff's previous relevant work was unskilled.  (Tr. 24).  Although the ALJ highlighted that Plaintiff's limitations prevented her from performing the full range of light work, based on the VE's testimony, the ALJ concluded that Plaintiff could perform the requirements of various occupations, *e.g.*, security monitor, machine tender-bonder, or machine tender-napper.[8]  Accordingly, the ALJ ruled that Plaintiff was "not disabled."

Plaintiff filed a Request for Review of Hearing Decision (Tr. 13), dated January 13, 2011.  On July 11, 2012, the Appeals Council denied the request (Tr. 1), making the ALJ's decision the final decision of the Commissioner.

---

[8] Notably, in posing a relevant hypothetical question to the VE at the hearing, the ALJ characterized Plaintiff's impairments, in part, as follows: "[She] [w]ould need to perform simple routine repetitive tasks.  Production or pace work would be okay.  Only occasional work setting changes, occasional contact with supervisors, no contact with coworkers and the public."  (Tr. 61).

9

Thereafter, on August 21, 2012, Plaintiff commenced the present action by

filing a Complaint (Doc. 1), seeking review of the ALJ's decision.  Defendant filed

an Answer on October 22, 2012 (Doc. 7), and, on the same day, the administrative

record was submitted (Doc. 8).  Plaintiff filed a brief on December 6, 2012 (Doc.

9), and Defendant filed a brief on January 10, 2013 (Doc. 10).  Plaintiff filed a

reply brief on January 11, 2013.  Accordingly, this matter is ripe for our review.[9]

## II.    STANDARD OF REVIEW

When considering a social security appeal, we have plenary review of all

legal issues decided by the Commissioner.  *See Poulos,* 474 F.3d at 91; *Schaudeck*

*v. Comm'r of Soc. Sec. Admin.,*  181 F.3d 429, 431 (3d Cir. 1999); *Krysztoforski v.*

*Chater,* 55 F.3d 857, 858 (3d Cir. 1995).  However, our review of the

Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine

whether those findings are supported by "substantial evidence."  *Poulos*, 474 F.3d

at 91*; Brown v. Bowen,* 845 F.2d 1211, 1213 (3d Cir. 1988); *Mason v. Shalala,* 994

F.2d 1058, 1064 (3d Cir. 1993).  Factual findings which are supported by

substantial evidence must be upheld. 42 U.S.C. § 405(g); *Fargnoli v. Massanari,*

247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by

---

[9]  This case was reassigned to the undersigned by way of verbal order on November 20,
2013.

10

substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); *Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir. 1981) ("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); *Keefe v. Shalala,* 71 F.3d 1060, 1062 (2d Cir. 1995); *Mastro v. Apfel,* 270 F.3d 171, 176 (4th Cir. 2001); *Martin v. Sullivan,* 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood,* 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)); *Johnson v. Commissioner of Social Security,* 529 F.3d 198, 200 (3d Cir. 2008); *Hartranft v. Apfel,* 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. *See Brown,* 845 F.2d at 1213. In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Commission,* 383 U.S. 607, 620 (1966). Substantial evidence exists only "in relationship to all the other

evidence in the record," *Cotter,* 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 474, 488 (1971).  A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. *See Mason,* 994 F.2d at 1064.  The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *See Johnson,* 529 F.3d at 203; *Cotter,* 642 F.2d at 706-707.  Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole.  *See Smith v. Califano,* 637 F.2d 968, 970 (3d Cir. 1981); *Dobrowolsky v. Califano,* 606 F.2d 403, 407 (3d Cir. 1979).

## III.   DISCUSSION

Here, Plaintiff argues that the ALJ improperly (1) posed a hypothetical question, which did not account for limitations that the ALJ had already found Plaintiff to possess; (2) failed to consider her PTSD; (3) did not address all relevant evidence, namely, the written statements of her boyfriend, Mr. Robert Goshorn; (4) evaluated Plaintiff's mental impairments by speculating as to causation; and (5) evaluated the medical opinions.  We will address each contention *seriatim*.

### A.   Hypothetical question

Plaintiff argues that the ALJ committed reversible error when she stated in her hypothetical question to the VE that "[p]roduction or pace work would be okay," (Tr. 61); *see supra* note 8, but, at step three of the sequential evaluation, determined that Plaintiff had "moderate difficulties" with regard to concentration, persistence, or pace.  (Tr. 20).  Defendant counters that an ALJ need not recount verbatim her findings as to the "Paragraph B" criteria and contends that the ALJ's explication of Plaintiff's limitations adequately conveyed her findings.

It is well established that a hypothetical posed to a VE "must reflect *all* of a claimant's impairments" and that "great specificity" is required when an ALJ incorporates a claimant's limitations into a hypothetical.  *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004) (emphasis in original) (citations and internal quotation marks omitted).  Accordingly, a VE's testimony regarding a claimant's ability to perform alternative employment "may only be considered for purposes of determining disability if the [hypothetical question presented by the ALJ] accurately portrays the claimant's individual physical and mental impairments." *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002).

The Third Circuit offered thorough guidance on this issue in *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004).  In that case, the ALJ issued a decision finding that the claimant was not disabled and attached thereto a Psychiatric

Review Technique Form ("PRTF") as required by the regulations at that time.  *See*

*id.* at 549.  On the PRTF, the ALJ had noted that the claimant "often" experienced

deficiencies of concentration, persistence, or pace.  *See id.*[10]  However, in posing

hypothetical questions to the VE, the ALJ did not raise this limitation, instead

stating, *inter alia*, that the claimant's activities should involve one or two-step

tasks, no travel outside of the workplace, and reasonable opportunity for personal

calls.  *See id.*  The Third Circuit concluded that the ALJ's decision was not

supported by substantial evidence because the hypothetical posed to the VE did not

accurately convey all of the claimant's impairments and limitations.  *See id.* at 552.

The Court reasoned that the limitations stated in the hypothetical did not account

for the ALJ's own observations, as stated in her decision and in the PRTF, that the

claimant often suffered from deficiencies in concentration, persistence, or pace.

*See id.* at 554.  The Court rejected the argument that the limitation regarding

simple tasks adequately accounted for deficiencies in pace, observing that "an

individual with deficiencies in pace might be able to perform simple tasks, but not

---

[10]  At the time *Ramirez* was issued, the regulations rated the relevant limitations on a frequency continuum: "never," "seldom," "often," "frequent," and "constant."  Revised in 2000, the present system rates mental impairments in terms of severity: "none," "mild," "moderate," "marked," and "severe."  *See Colon v. Barnhart*, 424 F.Supp.2d 805, 811 (E.D. Pa. 2006) (explaining the revisions).  Various district courts have concluded that a rating of "often" under the former system is equivalent to "moderate" under the present system, as both designations fall at the same point on the five-point scales.  *See*, *e.g.*, *id.*; *Dynko v. Barnhart*, No. 03-cv-3222, 2004 WL 2612260, at *5 n. 34 (E.D. Pa. Nov. 16, 2004).

over an extended period of time." *Id.* The Court additionally noted that the VE

indicated that each of the identified jobs (assembler, packer, and inspector) would

have production quotas requiring a certain degree of pace. *See id.* Acknowledging

that there may be a valid reason for the ALJ's omission, (*e.g.*, "that the deficiency

in pace was so minimal or negligible that, even though [the claimant] 'often'

suffered from this deficiency, it would not limit her ability to perform simple tasks

under production quotas"), the Court determined that the record did not support

this position. *Id.* at 555. Finally, the Court rejected the contention that the PRTF

findings are only relevant at steps two and three, and not at steps four and five of

the sequential evaluation. *See id.*

In light of *Ramirez*, which Plaintiff invokes in her brief, we find that the

ALJ's hypothetical failed to sufficiently convey Plaintiff's impairments. We deem

it significant that the ALJ's own factual finding reflected that Plaintiff experienced

"moderate" deficiencies in concentration, persistence, or pace at step three (Tr. 20),

but that later, without expressing a rationale, the ALJ not only failed to mention

such deficiency but affirmatively stated that production or pace work would be

acceptable. (Tr. 61). It is plausible that, as suggested in *Ramirez*, the ALJ

determined Plaintiff's limitations in concentration, persistence, or pace to be

adequately moderated by means of other accommodation. However, the ALJ did

15

not offer a rationale which would harmonize the two apparently dissonant statements.  We are further compelled by the rulings of other district courts within our Circuit, which have similarly refused to uphold an ALJ's decision where the claimant had "moderate" deficiencies in concentration, persistence, or pace (or "often" experienced such deficiencies), and the ALJ limited the claimant to only simple and routine and/or low-stress work.  *See*, *e.g.*, *Kaumans v. Astrue*, No. 11-cv-01404, 2012 WL 5864436, at *10 (M.D. Pa. Nov. 19, 2012).  *Keiderling v. Astrue*, No. 07-2237, 2008 WL 2120154, at *6-7 (E.D. Pa. May 20, 2008); *Barry v. Astrue*, No. 05-1825, 2007 WL 2022085, at *4 (E.D. Pa. July 9, 2007); *Foley v. Barnhart*, 432 F.Supp.2d 465, 481-82 (M.D. Pa. 2005).  In addition, as observed by *Ramirez*, we cannot discount that it is Defendant's burden to demonstrate Plaintiff's capacity to undertake alternative employment in the national economy.  *See Ramirez*, 372 F.3d at 555 (citing *Burns*, 312 F.3d at 119).

## B.    Failure to consider PTSD

Plaintiff argues that the ALJ erred by failing to recognize the existence of or otherwise address Plaintiff's alleged PTSD, which impairment she mainly attributes to witnessing a fire that killed two of her children.  Defendant disputes that Plaintiff's challenge lacks merit because she does not identify any functional limitations resulting from her PTSD beyond those already incorporated in her RFC

assessment.

In considering a claimant's impairments, at step two of the sequential inquiry, the ALJ must determine whether the claimant has a medically-severe impairment or a combination of impairments. *See Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality or a combination of slight abnormalities which have 'no more than a minimal effect on an individual's ability to work.'" *Id.* (quoting SSR 85-28, 1985 SSR LEXIS 19, at *6-7). If the claimant demonstrates more than a "slight abnormality," her impairment is considered "severe," and the evaluation process proceeds. At step four, in determining RFC, an ALJ must consider all of a claimant's medically determinable impairments of which she is aware, including those that are not "severe," *see* 20 C.F.R. § 404.1545(a)(2), and "must consider all evidence before [her]." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted).

While it is within the ALJ's purview to weigh the evidence, "it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason . . . , [and] an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for

17

rejection were improper." *Cotter*, 642 F.2d at 706-07.

As a preliminary observation, the ALJ specifically asked Plaintiff to confirm a complete listing of her impairments at the administrative hearing, and Plaintiff did not raise her alleged PTSD impairment at that time. (Tr. 33-34). However, Plaintiff did allege on her application for SSI that she suffered from PTSD (Tr. 150), and there are several reports in the record explicitly supporting Plaintiff's claim, namely: a History and Physical Examination report completed by Dr. Lizabeth Potter, MD, dated June 11, 2004, with an admission diagnosis of PTSD (Tr. 287); a Discharge Summary report completed by Dr. Sylvestre de la Cruz, MD, dated June 17, 2004, with a discharge diagnosis of "[PTSD] by history" (Tr. 290); the Clinical Psychological Disability Evaluation conducted by Dr. Schneider, dated May 6, 2009, diagnosing Plaintiff with chronic PTSD (Tr. 978); and a Suicide Prevention Safety Plan from a VA medical center dated December 8, 2009, indicating that Plaintiff suffers from PTSD (Tr. 1048).

We find that the ALJ was required to explain her reasoning for effectively rejecting the existence of the alleged PTSD impairment. Unlike cases where reviewing courts found that an ALJ was not obligated to address a claim which was not presented on an application for benefits or through testimony at a hearing, *see*, *e.g.*, *Robinson v. Astrue*, 365 Fed.Appx. 993, 995 (11th Cir. 2010); *Pena v. Chater*,

76 F.3d 906, 909 (8th Cir. 1996), here, notably, Plaintiff did allege PTSD in her benefits application.  As to the ALJ's analysis, while it is true that the ALJ explained the weight she attributed to the various medical examiners' opinions (Tr. 23) – and she did expressly discount the opinion of Dr. Schneider, who had diagnosed Plaintiff with PTSD – she did not explain her reasoning for declining to consider Plaintiff's PTSD, nor did she acknowledge that Plaintiff alleged such an impairment.  Without an explicit discussion, we cannot discern whether the ALJ did not credit the alleged PTSD impairment or simply overlooked or ignored it. *See Gibson v. Astrue*, 1:12-cv-01292, 2013 WL 1163366, at *11 (D.N.J. Mar. 19, 2013) ("Ultimately, without the ALJ even mentioning obviously probative evidence at any stage of the evaluation, the Court has no way of knowing whether it 'was not credited or simply ignored,' which makes a proper review of the record impossible." (quoting *Cotter*, 642 F.2d at 705)).  While we admonish Plaintiff for failing to raise her alleged impairment at the administrative hearing, we cannot but conclude that the ALJ's failure to acknowledge or discuss the impairment of PTSD constitutes reversible error.

### C.      Consideration of non-medical evidence of Mr. Robert Goshorn

Plaintiff contends that the ALJ erred by failing to acknowledge and evaluate the statements of Mr. Robert Goshorn, Jr., Plaintiff's boyfriend of 16 years.

Defendant argues that, because Mr. Goshorn's statements largely duplicate Plaintiff's testimony, the ALJ was not required to expressly address them.

Specifically, the record contains two documents, both entitled Function Report Adult (Third Party), completed by Mr. Goshorn on April 20, 2008 (Tr. 217-226) and on February 4, 2009 (Tr. 258-266), respectively.  In sum, as to Plaintiff's disabilities, Mr. Goshorn highlighted that Plaintiff's back pain interferes with daily activities, that she is not comfortable around other people, and that she has difficulties understanding and remembering instructions and coping with stress.  In addition, as to Plaintiff's capabilities, Mr. Goshorn represented that Plaintiff does household chores like laundry, cooking, and cleaning, but takes breaks as needed; has no problems with her own personal care (*e.g.*, dressing, bathing, and person hygiene); and enjoys leisure activities such as camping, hiking, fishing, and crafts. Mr. Goshorn did not mention Plaintiff's alleged headaches.

An ALJ must consider all relevant evidence, including non-medical evidence, before her.  *See Burnett v. Commissioner of Social Security Administration*, 220 F.3d 112, 122 (3d Cir. 2000).  "Although allegations of pain and other subjective symptoms must be consistent with objective medical evidence, . . . the ALJ must still explain why [s]he is rejecting the testimony." *Id.* (citations omitted).

Here, the ALJ expressly found that Plaintiff's statements concerning the severity and limiting effects of her symptoms were not entirely credible (Tr. 21-22), however, she did not discuss the statements of Mr. Goshorn, nor provide a reason for rejecting them.  Even if this deficiency is harmless, *see*, *e.g.*, *Butterfield v. Astrue*, No. 06-0603, 2011 WL 1740121, at *6 (E.D. Pa. May 5, 2011) (declining to remand where, although the ALJ failed to specifically discuss a witness's testimony, the testimony was cumulative and the ALJ's decision was supported by substantial evidence; collecting cases employing the same rationale), as we are remanding this case on other grounds in any event, we instruct that the ALJ consider the non-medical evidence provided by Mr. Goshorn on remand.  *See Eskridge v. Astrue*, 569 F.Supp.2d 424, 440 (D. Del. 2008); *Mason v. Barnhart*, No. 04-0242, 2004 WL 3019319, at *4 n.2 (E.D. Pa. Dec. 28, 2004).

### D.    Evaluation of mental impairments

In her fourth contention, Plaintiff argues that the ALJ impermissibly speculated that, "[a]lthough there is no evidence of current substance abuse, [Plaintiff's] depressive symptoms could be attributable to chronic use of prescribed narcotics."  (Tr. 23).  Plaintiff states that the ALJ cited no medical evidence or authority for this conjecture.  She maintains that the ALJ evaluated and rejected her depressive symptoms on an unsupported basis and asserts that such error warrants

reversal.  Defendant counters that, even if the ALJ erred, Plaintiff has failed to show that the error would change the outcome of this case.

It is elemental that an ALJ may not substitute her own judgment for that of a physician, nor employ her own expertise to argue against competent evidence presented by a physician.  *See Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).  In this instance, the ALJ appears to have tendered her own theory as to the cause of Plaintiff's depressive disorder.  While the ALJ's deduction appears improper – and, also, seemingly gratuitous – we do not perceive that it prejudiced Plaintiff.  Although the ALJ may have speculated as to the cause of Plaintiff's relevant impairment, an RFC determination is focused on a plaintiff's actual physical and mental limitations, not their cause.  And, here, the ALJ marshaled substantial evidence to support her ultimate RFC determination.  (Tr. 20-23).

### E.    Evaluation of medical opinions

Finally, Plaintiff disputes that the ALJ erred by rejecting Dr. Schneider's and Dr. Mueller's medical assessments.  Plaintiff avers that Dr. Schneider based his opinion on his own observations and expertise, not just Plaintiff's representations. Thus, insofar as the ALJ discredited Dr. Schneider's report as derived solely from Plaintiff's subjective statements, Plaintiff maintains the evidence was incorrectly rejected.  In addition, Plaintiff argues that it was improper for the ALJ to rely, in

part, on the report of Dr. Popat, the state agency physician, in discounting Dr. Mueller's assessment.  She centrally states that Dr. Popat conducted his review on May 14, 2008 (Tr. 766-72), approximately six months before Plaintiff filed her application for SSI and, therefore, challenges that the opinion was stale.  Defendant counters that the ALJ properly discounted Dr. Schneider's opinion because, among other things, the opinion was mainly based on Plaintiff's subjective statements (and the ALJ had found Plaintiff not entirely credible); because the opinion was unsupported by record evidence; and because Dr. Schneider's "own findings do not support the overly restrictive limitations he placed on Plaintiff's ability to work."  (Doc. 10, p. 21).  As to the relevance of Dr. Popat's opinion, Defendant challenges that an ALJ may generally rely on older assessments so long as no additional medical evidence, postdating the date of review, suggests that the state agency consultant's report should be updated.  *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

In examining conflicting medical opinions, it is within the ALJ's purview to determine which to credit.  *See Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).  However, the ALJ must explain her reasoning in this regard and may not "reject evidence for no reason or for the wrong reason."  *Id.* (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993) (internal quotation marks omitted).

Further, as the Third Circuit recently articulated,

> [t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.  *See* 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c).  Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, *see*, *e.g.*, 20 C.F.R. § 404.1527(d)(1)-(2), "[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity," *Brown v. Astrue*, 649 F.3d 193, 197 n. 2 (3d Cir. 2011).  State agent opinions merit significant consideration as well.  *See* SSR 96–6p ("Because State agency medical and psychological consultants . . . are experts in the Social Security disability programs, . . . 20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] . . . to consider their findings of fact about the nature and severity of an individual's impairment(s) . . . .").

*Chandler*, 667 F.3d at 361.

Here, upon review of the record, we agree with Defendant that it was not improper for the ALJ to attribute limited weight to Dr. Schneider's opinions.  She explained her determination as follows:

> Dr. Schneider assessed the claimant with marked to extreme limitations in basic work-related mental activities.  These limitations appear based on the claimant's subjective statements.  The objective mental status findings and observations do not support that she is this limited. . . .  The undersigned gives greater weight to the assessments from the state agency psychologists since they are more consistent with the limited objective findings and treatment history [citing the Mental Residual Functional Capacity Assessments of Dr.

24

Gavazzi].

(Tr. 23).  Dr. Schneider performed two consultative examinations, and the ALJ

properly observed that his reports were largely based on Plaintiff's own

representations.  As the ALJ found Plaintiff only partially credible, she may

appropriately discount the opinion of Dr. Schneider to the extent that it was based

on Plaintiff's subjective statements.  *See Morris v. Barnhart*, 78 Fed.Appx. 820,

825 (3d Cir. 2003) ("An ALJ may discredit a physician's opinion on disability that

was premised largely on the claimant's own accounts of her symptoms and

limitations when the claimant's complaints are properly discounted." (citation

omitted)).

Turning to the alleged staleness of Dr. Popat's review, we agree with

Defendant that the date of issuance of the report alone should not restrain the ALJ

from relying on it.  Fundamentally, SSI is a needs-based program and benefits may

not be paid "for any period that precedes the first month following the date on

which an application is filed or, if later, the first month following the date all

conditions for eligibility are met."  20 C.F.R. § 416.501.  In light of the eligibility

requirements, determination of eligibility for SSI benefits is not limited to a

specific period before the onset of the disability.  Moreover, here, Plaintiff does not

allege a change in her medical condition following Dr. Popat's report which would

25

warrant its amendment.  *See Chandler*, 667 F.3d at 361.

## IV.    CONCLUSION

For the reasons herein stated, the Court will remand this matter for further

proceedings consistent with this Memorandum.  An appropriate order shall issue.